UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| VS. | § CRIMINAL ACTION NO. H-10-12-1 |
| | § |
| HUGO ORTIZ | § |

**OPINION & ORDER**

Pending before the Court is Defendant Hugo Ortiz's ("Ortiz") motion to dismiss the indictment (Doc. 56), as well as the Government's response (Doc. 89), and Ortiz's reply (Doc. 98). Upon careful review and consideration of this motion, the response and reply thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Defendant's motion should be denied.

I. Background and Relevant Facts

The following allegations are drawn from the Government's summary of this case. (Doc. 89 at 2–3.) On September 11, 2009, Agent Sehon, an off-duty Texas Alcohol and Beverage Commission officer, and Mr. Novosel ("Novosel"), a traveling salesman for Movado Jewelry, went to 2301 Sage Road, a Hilton Garden Inn, and parked at the front entrance. Novosel was staying at the Hilton Garden Inn during a brief visit to Houston, Texas. Agent Sehon was working an extra job providing security for Novosel. While Agent Sehon stayed in a rented Chevrolet Impala to guard the Movado watches located in the backseat, Novosel went into the hotel to use the restroom. Santos Diaz-Soto ("Diaz-Soto") and Gabriel Ocampo-Mayorquin ("Ocampo-Mayorquin") then ran up to the Impala, broke the car's windows, and held Agent Sehon at gunpoint while they attempted to rob him of the watches. Agent Sehon fired shots at

the suspects; Diaz-Soto was shot in the back and arms and Ocampo-Mayorquin was shot in the arm. Diaz-Soto and Ocampo-Mayorquin immediately got into a green Acura and Juan Carlos Valencia ("Valencia") drove them away from the scene of the robbery.

Immediately after the robbery, four witnesses saw three suspicious vehicles entering the Gables Apartment Complex parking lot at 3300 Sage Road at a high rate of speed. The vehicles stopped in the parking lot and the defendants switched in and out of the cars before fleeing. Marcela Osorio-Pemberthy got out of a maroon SUV and into the driver's seat of the green Acura, and drove away. Valencia took Ocampo-Mayorquin in the maroon SUV to another location to treat Ocampo-Mayorquin's gunshot wounds. Ortiz left the Gables parking lot in a black Toyota Sequoia with Diaz-Soto. After dropping Diaz-Soto off at Memorial Hermann Southwest Hospital for treatment of his gunshot wounds, Ortiz fled.

Along with his five codefendants, Ortiz is charged with conspiring to interfere with commerce by robbery and with interference with commerce by robbery, both in violation of the Hobbs Act, 18 U.S.C. § 1951(a). (Doc. 24.) Ortiz initially appeared before U.S. Magistrate Judge Frances H. Stacy on December 9, 2009. (Doc. 9.) On December 11, 2009, Ortiz was denied bond and remanded to the custody of the U.S. Marshals Service. (Doc. 16.) He was indicted on January 13, 2010. (Doc. 24.) Ortiz now moves to dismiss the indictment against him pursuant to the Speedy Trial Act of 1974, as amended, 18 U.S.C. §§ 3161 *et seq.* Ortiz argues that he was indicted more than thirty days after his arrest on federal charges, in violation of 18 U.S.C. § 3161(b). The Government concedes that "the indictment was returned three days late," but contends that the absence of an essential witness tolled the thirty day period. (Doc. 89 at 7.) On June 17, 2010, the Court held an evidentiary hearing on the matter. (Doc. 107.) At the hearing, FBI Special Agent Mario Aguilar and Lauro Alfaro from A Way Out Bonding

Company testified.  (Doc. 105.)

II. Speedy Trial Act

The Speedy Trial act requires that "[a]ny information or indictment charging an individual with the commission of an offence be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. § 3161(b).  Excluded from the thirty days is "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness."  18 U.S.C. § 3161(h)(3)(A).

Ortiz bears the burden of proof in his motion to dismiss under the Speedy Trial act.  18 U.S.C. § 3162(a)(2).  The Government, however, has the burden of going forward with the evidence with respect to the exclusion of time for an absent essential witness under 18 U.S.C. § 3161(h)(3).  *Id.*; *See United States. v. Hamilton*, 46 F.3d 271, 275 (3d Cir. 1995).

The remedy required for violation of the Speedy Trial act is dismissal of the indictment.  18 U.S.C. § 3162(a)(1).  However, the court may dismiss the indictment with or without prejudice.  "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  *Id.*; *See United States v. May*, 819 F.2d 531, 534 (5th Cir. 1987).

III. Discussion

Diaz-Soto was cooperating with the Government and had provided information inculpating his codefendants, including Ortiz.  (Doc. 89 at 5.)  Diaz-Soto was able to post bond

on his state charges before the federal government took custody of him.  (*Id.* at 4.)  Diaz-Soto fled and remains a fugitive.  (*Id.* at 5.)  Based on testimony taken at the evidentiary hearing, the Court finds that the Government has and continues to exercise due diligence in an effort to locate Diaz-Soto.  (Doc. 107.)  After Diaz-Soto fled, the Government was forced to reevaluate its case against Ortiz and his codefendants, in turn delaying the indictments.  (Doc. 89 at 5.)

The Government argues that the "absence" of Diaz-Soto, an "essential witness," tolled the thirty day period.  (Doc. 89 at 7.)  The Court finds that Diaz-Soto is clearly "absent" within the meaning of the Speedy Trial act.  18 U.S.C. § 3161(h)(3)(B) (considering an essential witness "absent when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence.").  The term "essential witness" is not defined in the Act.  Courts generally consider essential a witness who can provide testimony "extremely important to the proceeding, perhaps providing proof that was not otherwise attainable."  *United States v. Marrero*, 705 F.2d 652, 656 (2d Cir. 1983) (citing S.Rep. No. 1021, 93rd Cong. 2d Sess. 37 (1974)).  Diaz-Soto would certainly be an essential witness against Ortiz at trial.  *Id.*  The question here, however, is whether Diaz-Soto is an essential witness under the Speedy Trial act for purposes of the indictment timeline.  The issue is seemingly one of first impression.

That the Government obtained an indictment against Ortiz without Diaz-Soto's assistance is largely immaterial.  *Hamilton*, 46 F.3d at 276 (deeming "a witness 'essential' for the purposes of 18 U.S.C. § 3161(h)(3)(A) even though the government could possibly obtain a conviction without that witness's testimony.").  Diaz-Soto, of course, would have been very unlikely to testify before the grand jury without a promise of immunity from the Government.  Nonetheless, the fact that Diaz-Soto was a fugitive and might not be available to testify at trial greatly limited

the Government's ability to present the case to a grand jury. The Court therefore finds that Diaz-Soto was an essential witness within the meaning of the Speedy Trial act for the purpose of tolling the indictment timeline.

IV. Conclusion

Accordingly, the Court hereby **ORDERS** that Hugo Ortiz's motion to dismiss (Doc. 56) is **DENIED**.

SIGNED at Houston, Texas, this 22nd day of June, 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE